UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| STEPHEN M. RYAN,<br><br>    *Plaintiff*,<br><br>v.<br><br>BROOKDALE INTERNATIONAL SYSTEMS, INC.<br>& E.I. DUPONT DE NEMOURS & CO.,<br><br>    *Defendants*. | § § § § § § § § § § § §    CIVIL ACTION H-06-01819 |

## ORDER

Before the court is defendant Brookdale International Systems, Inc. and defendant E.I. DuPont De Nemours & Co.'s motions to dismiss plaintiff Stephen M. Ryan's fraud claim for lack of standing under Federal Rule of Civil Procedure 12(b)(1); failure to state a claim upon which relief can be granted under Rule 12(b)(6); or, in the alternative, failure to plead fraud with the particularity required by Rule 9(b). Dkts. 26 & 27. Upon consideration of the defendants' motions, plaintiff's response, the evidence of record, and the applicable law, the motion to dismiss is GRANTED in part and DENIED in part for the reasons detailed below. Plaintiff's claim is dismissed without prejudice and plaintiff is given thirty days from the date of this order to amend his pleadings to comply with Federal Rule of Civil Procedure 9(b).

### I. BACKGROUND

Defendants Brookdale International Systems and E.I. DuPont De Nemours developed, manufactured, and marketed EVAC-U8 and EVAC+ smoke hoods. Dkt. 1. These single use devices were designed to protect the wearer's head, eyes, and respiratory system by filtering air from the harmful and toxic by-products of fire for approximately fifteen minutes, thereby enabling "self-rescue

in fire/smoke emergencies." *Id.* The devices at issue have shelf-lives of approximately five years and eight years, respectively. *Id.*

Plaintiff filed suit in the Southern District of Texas on May 31, 2006, alleging breaches of express and implied warranty and fraud on behalf of himself and other similarly situated individuals.[1] The claims stem from a voluntary recall of the devices. As a result of the recall, Ryan claims that the devices failed in their "essential and exclusive purpose of providing protection [from] smoke as a result of fire and other toxic gases." *Id.* This court found that Ryan lacked injury and precluded Ryan from pursuing remedy under all three theories of recovery. As such, it dismissed all three claims for lack of standing, but did not reach the merits of the claims. Dkt. 19. Ryan then appealed to the Fifth Circuit. Dkt. 20. The Fifth Circuit affirmed dismissal of Ryan's breach of express and implied warranty claims for failure to demonstrate an injury in fact because the likely damages—loss of the "benefit of the bargain"—are not available under a no-injury product liability theory of recovery. *Ryan v. Brookdale Int'l Sys., Inc.*, 230 Fed. Appx. 366, 368 (5th Cir. 2007). However, the Fifth Circuit noted that Ryan could have standing as a purchaser or consumer of the product at issue for the fraud claim and thus remanded the fraud claim to this court. *Id.* The defendants now move the court to dismiss the fraud claim.

The following facts form the basis for the fraud claim. On April 25, 2005, after researching on the internet, Ryan purchased three of the EVAC-U8 hoods from Safer America for a total cost of $199.50, plus $7.35 in shipping. Dkt. 1. One year later, Brookdale cooperated with the U.S. Consumer Product Safety Commission by voluntarily issuing a "Suspend Use" advisory and

---

[1] Plaintiff Ryan seeks to represent a putative class; however, no class has been certified and Ryan is the only named plaintiff.

2

recalling all hoods currently in the marketplace that had not expired. *Id.* At this time, the Consumer Product Safety Commission issued a press release indicating that the hoods "*could* fail to work properly, exposing the user to harmful carbon monoxide." *Id.* (emphasis added). Brookdale offered purchasers a prorated refund, based upon the remaining shelf-life of each hood that they owned. *Id.* Notably, Ryan does not clearly state that he actually participated in the recall and received only a prorated refund. He indicates only that the prorated refund was offered, and describes the way in which it would be calculated. *Id.* Moreover, Ryan does not argue that he used the hood or that it failed in a direct way, thereby causing him physical injury. *Id.* In fact, it is not known whether Ryan's devices are actually defective. *Id.* Ryan seeks his out-of-pocket monetary damages, asserting entitlement to the full purchase price of the device, plus shipping costs, as opposed to a prorated refund.[2] *Id.*

Ryan claims that his decision to purchase the devices was based in part on the defendants' misrepresentations, which were contained in advertisements. *Id.* In these advertisements, defendants allegedly represented that the products were: free from defect and would meet a specified level of performance; high quality and met the smoke and gas testing standards for Australia, Europe, and Japan; capable of protecting against the toxic gases most commonly found in smoke for up to fifteen minutes; and able to convert carbon monoxide to carbon dioxide and protect against carbon monoxide. *Id.* Ryan does not specify the exact verbiage of these advertisements, where (or even in what medium) these advertisements appeared, which defendants' were named in the advertisements,[3]

---

[2] Ryan's argument is based on the belief that the devices were useless, and thus valueless, at the time of purchase. Dkt. 1.

[3] Plaintiff asserts that the phrase "Brookdale (a DuPont company)" appears on the User's Manual for the EVAC-U8 and that the DuPont name appears on each device. Dkt. 1.

or in what specific timeframe the advertisements ran.[4] *See id.* Ryan does indicate that the EVAC-U8 user manual describes the device as an "air purifying respirator designed to protect the user's head, eyes, and respiratory system from the effects of smoke, transient flame, and fire gases . . . for [fifteen] minutes." *Id.* Ryan alleges that these statements are material because they address the "nature and extent of the safety protection that the devices purportedly provided," which was the "only use" for the devices. *Id.* Because the representations were contained in advertisements and promotions, Ryan believes that the statements were intended to induce the purchase of the devices by consumers such as himself. *Id.* Ryan construes the recall as an admission by the defendants that the claims in the advertisements were false. *Id.* Further, Ryan believes the statements were either knowingly or recklessly false when they were made because defendants claimed to have "extensively tested the device" to ensure that it "met certain rigorous safety standards." *Id.* Ryan insists that such testing would likely reveal any significant defects in the products. He seeks compensatory damages for the full value of the hoods that he purchased, plus shipping and handling costs; incidental and consequential damages; exemplary damages; costs of suit; attorneys' fees; and prejudgment and postjudgment interest. Dkt. 1.

## II. ANALYSIS

### A. Standing

"The 'irreducible constitutional minimum of standing contains three elements': 'the plaintiff must have suffered an injury in fact,' 'there must be a causal connection between the injury and the conduct complained of,' and 'it must be likely . . . that the injury will be redressed by a favorable

---

[4] Plaintiff identifies an approximately six-year window in which the advertisements allegedly ran. Dkt. 1.

decision.'" *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 318 (5th Cir. 2002) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations omitted)). "The plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing these elements. Failure to establish any one deprives the federal courts of jurisdiction to hear the suit." *Id.* at 318-19 (citation omitted).

With respect to the requirement of injury in fact, when the Fifth Circuit remanded the fraud claim, it noted that if sufficient evidence existed to support a claim of fraud, Ryan could have standing as a purchaser or consumer. *Ryan*, 230 Fed. Appx. at 368. However, Ryan neither asserts that he purchased the EVAC+, nor denies defendants' allegations that he failed to purchase this model. Dkt. 1. Further, Ryan does not allege that he used the EVAC+ model hood, much less that it failed. *Id.* Instead, Ryan argues that the EVAC+ purchasers were defrauded in the same manner as the EVAC-U8 purchasers and thus he intends to represent both classes of purchasers. Dkt. 30. Because Ryan neither purchased nor used the EVAC+ smoke hood, he could not have suffered an injury in fact pertaining to that particular model thus lacks standing with regard to any claims pertaining to the EVAC+ model. An inquiry into standing is a prerequisite to class certification; without standing, an individual cannot represent a class. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996).

With respect to the EVAC-U8 model, Ryan did purchase the hood and thus has standing. Dkt 1; *see Ryan*, 230 Fed. Appx. at 368. Texas cases have "clearly establish[ed] that tort damages are not precluded simply because a fraudulent representation causes only an economic loss." *Formosa Plastics Corp. v. Presidio Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 49 (Tex. 1998). In a case somewhat analogous to the present case, *Cole v. General Motors Corp.*, the Fifth Circuit held

5

that plaintiffs suffering purely economic damages suffered an injury in fact sufficient to confer standing. *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 722-23 (5th Cir. 2007).[5] Texas recognizes both out-of-pocket and benefit-of-the-bargain (i.e. contract-like damages) as measures of direct damages in a tort-based claim of common-law fraud. *See, e.g.*, *Formosa*, 960 S.W.2d at 47. Therefore, the plaintiff's claims pertaining to the EVAC+ are dismissed without prejudice pursuant to Rule 12(b)(1) because plaintiff has not suffered an injury in fact with respect to that particular model. However, construing the pleadings liberally and in favor of the plaintiff, plaintiff has standing to pursue the fraud claims pertaining to the EVAC-U8 device.

**B. Fraud**

"Under Texas law, a claim of fraud requires: (1) a material misrepresentation, (2) that was either known to be false when made or was asserted without knowledge of its truth, (3) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury." *GMAC Commercial Mortgage Corp. v. E. Tex. Holdings, Inc.*, 441 F. Supp. 2d 801, 805 (E.D. Tex. 2006); *see also Formosa*, 960 S.W.2d at 47.

**1. Failure To State A Claim Upon Which Relief Can Be Granted: Rule 12(b)(6)**

Generally, dismissals for "failure to state a claim upon which relief can be granted," are disfavored and rarely granted. *GMAC*, 441 F. Supp. 2d at 804 (quoting *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)). Although many courts traditionally have read *Conley v. Gibson* literally, thus authorizing dismissal for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

---

[5] In *Cole*, none of the plaintiffs' airbags actually malfunctioned; therefore, no plaintiff was physically injured by a defective airbag. *Id.* at 722.

relief," the U.S. Supreme Court recently explicitly abrogated such a verbatim reading. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968-69 (2007) ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . ."); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Under *Twombly*, a complaint does not require "detailed factual allegations," but the plaintiff must put forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1964-65. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed.2004)).

A complaint warrants dismissal if it "fail[s] *in toto* to render plaintiff's entitlement to relief plausible." *Id.* at 1973 n.14 (second emphasis added). "Plausible" is a heightened standard, compared to merely "conceivable." *Id.* at 1974 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.") Plausibility does not equate to probability, but rather it "raise[s] a reasonable expectation that discovery will reveal evidence of [a required element]." *Id.* at 1965.

**a. Material Misrepresentation Known to be False When Made or Asserted Without Knowledge of Its Truth**

Defendants argue that Ryan has failed to state a claim upon which relief can be granted under Rule 12(b)(6). "While fraud may be pled on information and belief when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 454 (5th Cir. 2005) (citing *United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir.1999)). First, Ryan points to defendants' voluntary recall of the devices as

7

an admission that the representations were false. Defendants' press release states that the products *could* fail to work properly, not that they *will* fail to work properly. Dkt 26. Simply because a product is at some point removed from the market due to an anticipated failure to comply with advertised specifications, it does not necessarily reasonably follow that defendants always, or even previously, knew of such anticipated failure. Defendants do not concede that engaging in a precautionary and voluntary recall renders all of the aforementioned statements false. "[C]onclusory allegations . . . masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Second, Ryan argues that defendants claimed that the products met testing standards for such devices as enforced in Australia, Europe, and Japan, and thus the testing efforts should have revealed to defendants that the devices would fail. Dkt. 1. This latter claim is plausible.

### b. Intended to be Acted Upon and Relied Upon

Additionally, Ryan claims that the alleged misrepresentations were presented in advertisements. Dkt. 1. From a practical perspective, it is plausible and, perhaps more accurately, probable that the advertisements were designed to encourage would-be consumers to purchase the publicized items. Ryan maintains that he did rely upon the advertisements in selecting the product he ultimately purchased, the EVAC-U8. However, Ryan also indicates that he relied upon the DuPont product name, presumably as an indicator of quality or reliability. Dkt. 1. Ultimately, it is plausible that Ryan relied upon the advertisements.

### c. Caused Injury

Although defendants allege that Ryan lacks an actual injury, as discussed previously, economic damages are sufficient to demonstrate an injury in fact for a tort claim. In allegations of

fraud, the plaintiff must plead that a "pecuniary loss was suffered as a result of reliance upon a false representation." *Coffel v. Stryker Corp.*, 284 F.3d 625, 637 (5th Cir. 2000) (citing *DiGrazia v. Atl. Mut. Ins. Co.*, 944 S.W.2d 731, 735 (Tex. App.—Texarkana, 1997, no writ)). In assessing the injury, Texas recognizes the out-of-pocket measure of direct damages for common law fraud. *Formosa*, 960 S.W.2d at 49. "The out-of-pocket measure computes the difference between the value paid and the value received . . . ." *Id.*; *see also Coffel*, 284 F.3d at 637. In conclusion, under the *Twombly* standard and considering the facts pleaded *in toto*, plaintiff's entitlement to relief is plausible, and thus the 12(b)(6) motion is denied.

**2. Failure To Plead With Particularity: Rule 9(b)**

Alternatively, defendants argue that even if Ryan has standing to bring the claim and also states a claim upon which relief can be granted, Ryan has failed to meet the heightened pleading requirements of Rule 9(b). Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Claims of fraud require "a higher, or more strict, standard than the basic notice pleading required by Rule 8." *Norman v. Apache Corp.*, 19 F.3d 1017, 1022 (5th Cir. 1994) (quoting *Shushany v. Allwaste, Inc.,* 992 F.2d 517, 521 (5th Cir. 1993)). "This standard is derived from concerns that unsubstantiated charges of fraud can irreparably damage a defendant's reputation." *Id.* The Rule is also intended "to preclude litigants from filing baseless complaints and then attempting to discover unknown wrongs." *Shushany,* 992 F.2d at 521 (internal quotation and citation omitted); *see also ABC Arbitrage Plaintiffs Group v. Tchuruk,* 291 F.3d 336, 349 (5th Cir.2002) ("Plaintiffs appear to assume that it is permissible to assert fraud and, through discovery, attempt to prove it. While this may be allowed in other contexts, it is not when fraud is alleged.").

Additionally, the Rule is designed to provide notice to defendants of the exact misconduct with which they have been charged, so that they may properly defend against such claims. *See ABC,* 291 F.3d at 349.

In the Fifth Circuit, the "'who, what, when, where, and how' of the alleged fraud" must be established. *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F.Supp.2d 689, 698 (W.D. Tex. 2007) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex.,* 336 F.3d 375, 384 (5th Cir. 2003) and citing *United States ex rel. Joshi v. St. Luke's Hosp., Inc.,* 441 F.3d 552, 556 (8th Cir. 2006)); *see also Ashlar Fin. Servs. Corp.*, No. 300CV2814-AH, 2002 WL 206439, at *4 (N.D. Tex. Feb. 8, 2002) ("Pleading fraud with particularity in this circuit requires 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.") (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 178 (5th Cir.1997)). Although "the particularity demanded by Rule 9(b) differs with the facts of each case," these elements must be established before access to the discovery process is granted. *United States ex rel. Wilkins v. N. Am. Constr. Corp.,* 173 F. Supp. 2d 601, 613 (S.D. Tex.2001); *see also WMX Techs.*, 112 F.3d at 178.[6] "A dismissal for failure to plead fraud with particularity under Rule 9(b) is treated as a dismissal for failure to state a claim under Rule 12(b)(6)." *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 901 (5th Cir. 1997).

**a. Who**

First, the individual or entity making the statement is not clearly identified. This is due in part to Ryan's failure to identify exactly where and in what medium the misrepresentations were

---

[6] *WMX Techs.* also notes that fraud claims based on state law also must meet the pleading requirements of Rule 9(b). *WMX Techs.*, 112 F.3d at 177.

made. It is unclear whether DuPont participated at all, with the exception of Brookdale being referenced to as a "DuPont company" and having the DuPont name on the device. Dkt. 1. Additionally, it is uncertain whether these advertisements containing the misrepresentations were actually created and distributed by either Brookdale or DuPont. Because the devices were sold by various resellers and, indeed, plaintiff purchased his device from a company by the name of Safer America, it cannot be assumed that defendants in fact created or distributed these advertisements or promotions. Dkt. 1. As such, Ryan fails to identify the "speaker."

> **b. What and Where**

Because the elements of "what" and "where" are intertwined in this particular case, the two elements are addressed concurrently. In the present case, Ryan makes general references to the alleged misrepresentations contained in advertisements and promotions. Ryan maintains that the advertisements indicated that the devices: (1) were free from defect and met a specified level of performance; (2) met testing standards of several foreign countries; (3) would protect against toxic gases found in smoke for up to fifteen minutes; and (4) protected against toxic gases created by fire, namely carbon monoxide. Dkt. 1. Ryan quotes brief excerpts of the language, but often fails to indicate where the verbiage appeared. *Id.*

In the instances where Ryan does specify the location of the language, the excerpts are seemingly, though not conclusively or entirely, attributed to the User Manual. Dkt. 1. However, Ryan likely could not have relied upon statements in the User Manual when he decided to purchase the device, because he would not have seen those statements until after the purchase. If Ryan did somehow read the User Manual before purchasing the device, he should be able to plead the exact language. Similarly, in *Pennington v. Vail Products, Inc.*, the plaintiff complained about the

11

contents of a manufacturer's instructional video. The *Vail* court noted that "[b]ecause plaintiffs rely on the contents of a . . . permanent medium[,] they should be able to allege specifically *what* was said . . . ." *Pennington v. Vail Prods., Inc.*, No. Civ.A. 303CV1961D, 2004 WL 302298, at *2 -3 (N.D. Tex. Jan. 8, 2004). As such, the misrepresentations allegedly contained in the User Manual would not be likely to support a claim of fraud, because they are *ex post* and unidentified.

Those statements not attributed to the User Manual also fall short of the standard. Ryan has failed to indicate specifically where each advertisement and promotion that he observed and upon which he relied was seen—whether they were solely within the User Manual, on a defendant(s)'s website, on a reseller website, in-store, or presented via some other medium such as television, radio, or print. Based upon Ryan's pleadings, defendants are arguably not put on notice of the specific content of the statements and the context in which they appeared. Thus, the defendants are likely unable to effectively defend against them.

### c. When

Although Ryan states generally that defendants "developed, manufactured, marketed, and sold" the devices "at least" between September of 2000 and March of 2006, such a large window of time does not give defendants sufficient notice to prepare a defense. *Cf. Terry v. NL Industries, Inc.*, No. 4:04CV269-P-B, 2007 WL 1484742, at *1 (N.D. Miss. May 17, 2007) (suggesting that "reference [to] advertisements in the *American Paint Journal,* February 3, 1941, and the *American Painter and Decorator,* June 1949" could be sufficient to meet the "when" and "where" requirements of Rule 9(b)); *Johnson v. Metabolife Intern., Inc.*, No. 3:01-CV-2082-G, 2002 WL 32494514, at *3 (N.D. Tex. Oct. 23, 2002) (finding failure to meet requirements of Rule 9(b) where plaintiff could not remember the "precise date and time the advertising was on the [television] or radio").

Advertisements are not static creations. A manufacturer's choice of advertising context may vary by geographical region, target audience, medium in which it is displayed, or even the time of the year that the advertisement is displayed. Without knowing when an advertisement ran, much less where it was seen or heard, a defendant may have little ability to identify the particular advertisement and prepare its defense. Because Ryan failed to indicate when he observed the allegedly fraudulent statements with a level of specificity that would provide notice to defendants, he fails to meet the requirements of Rule 9(b).

### e. How

The plaintiff must also explain how the statement is fraudulent; thus Ryan must "plead with particularity what the person making the misrepresentation obtained thereby . . . and . . . explain the reason or reasons why the statement is misleading, *i.e.,* why the statement is fraudulent." *ABC*, 291 F.3d at 350. Notably, several courts omit specific analysis of the "how" element in their analyses of the pleading. *See, e.g.*, *WMX Techs., Inc.,* 112 F.3d at 178; *Shushany,* 992 F.2d at 521. And, the question of how these statements were fraudulent is not necessary to this inquiry. Because Ryan fails to sufficiently plead the who, what, where, and when, the particularity with which he pled the how of the fraud is essentially moot.

Ryan's complaint fails to plead fraud with the particularly required by Rule 9(b). Ultimately, "it is not the Court's responsibility to sift through . . . [the] complaint and identify each and every short-coming. Rather, once this Court holds that a complaint is insufficiently pled, it is the duty of the attorneys drafting the complaint to conduct research into pleading requirements and then convert that research into practice." *Lam*, 481 F. Supp. 2d at 699. Therefore, although the court has identified some flaws in the pleadings, the existence of *any* short-coming renders it inadequate.

Accordingly, the motion to dismiss pursuant to Rule 9(b) is granted.

"While courts routinely dismiss causes of action without leave to replead when they grant motions to dismiss for failure to state a claim, there is a general consensus that plaintiffs should be provided with an opportunity to amend their complaint to meet Rule 9(b)'s requirements before ordering dismissal." *Ashlar Fin. Servs. Corp.*, 2002 WL 206439, at *3; *see also Bell Helicopter Textron*, 417 F.3d at 456 ("[W]e find that the dismissal with prejudice . . . was unwarranted where . . . claims were dismissed on a Rule 12(b)(6) motion based on a lack of specificity in the complaint as required by Rule 9(b)."). Federal Rule of Civil Procedure 15(a), in combination with other Federal Rules, "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Johnson*, 2002 WL 32494514, at *4 (quoting *Conley,* 355 U.S. at 48). "The Fifth Circuit has repeatedly held that Rule 15(a) evinces a liberal amendment policy." *Id.* In light of this precedent, Ryan is granted thirty days from the date of this order to amend his pleadings in accordance with the requirements of Rule 9(b).[7]

### III. CONCLUSION

Because plaintiff neither purchased, nor used the EVAC+ model, he lacks standing to raise claims of fraud pertaining to that device. Without standing, plaintiff cannot represent the putative class of purchasers and users of the EVAC+ model. As such, defendants' 12(b)(1) motion is GRANTED as it pertains to the EVAC+ model and those claims are DISMISSED without prejudice.

---

[7] "[T]he circumstances and terms upon which leave is to be 'freely given' is committed to the informed, careful judgment and discretion of the Trial Judge as he superintends the development of a cause toward its ultimate disposition." *Johnson*, 2002 WL 32494514, at *4 (quoting *Lone Star Motor Import, Inc. v. Citroen Cars Corp.,* 288 F.2d 69, 75 (5th Cir.1961)).

Defendants' 12(b)(6) motion to dismiss plaintiff's claims regarding the EVAC-U8 device is DENIED.

Additionally, Ryan has failed to plead the claim of fraud with the particularity required by Rule 9(b); therefore, defendants' 9(b) motion as it relates to the EVAC-U8 device is GRANTED. Plaintiff's fraud claim pertaining to the EVAC-U8 device is therefore DISMISSED without prejudice and Ryan is granted leave to amend his pleadings within thirty days of the date of this order.

It is so ORDERED.

Signed at Houston, Texas on November 6, 2007.

_____
Gray H. Miller
United States District Judge